FILED
2021 Nov-05  AM 07:55
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
### EASTERN DIVISION

FILED
2021 NOV -3 P 1: 54
U.S. DISTRICT COURT
N.D. OF ALABAMA

| | | |
|---|---|---|
| **JAMES HARBIN,** | ) | |
| **SHONNIE MAGLIONE,** | ) | |
| **& TINA RIDLEY** | ) | Civil Action No.: |
| **Plaintiffs,** | ) | 1:21-CV-1409-ACA |
| **v.** | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| **TPFE, INC.,** | ) | |
| **LAV SERVICES, LLC, &** | ) | |
| **RICHARD ZEITLIN** | ) | |
| **Defendants.** | ) | |

## COMPLAINT

Comes now Plaintiffs, James Harbin ("Harbin"), Shonnie Maglione ("Maglione"), and Tina Ridley ("Ridley") by and through their undersigned counsel, hereby files this Complaint for relief against the Defendants TPFE, Inc., LAV Services, LLC, and Richard Zeitlin (collectively "Defendants") and alleges as follows:

### NATURE OF THE CASE

1.    This is a lawsuit brought by the Plaintiffs seeking permanent relief from unlawful discriminatory and retaliatory practices committed by Defendants. The practices committed by the Defendants violate Plaintiffs' rights secured by:

a.   The Americans with Disability Act of 1990 (ADA), as amended, 42 U.S.C. § 12101 *et seq.;*

b.   The Family and Medical Leave Act (FMLA), 29 U.S.C. § 2601 *et. seq;* and

c.   The Consolidated Omnibus Budge Reconciliation Act of 1986 (COBRA), 29 U.S.C. § 1161 *et. seq.* and the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001, *et. seq.*

## TABLE OF CONTENTS

| **Page No.** | **Section and/or Claims:** |
| --- | --- |
| 4 | Parties |
| 7 | Administrative Remedies |
| 9 | Jurisdiction and Venue |
|  | **Harbin's Claims:** |
| 11 | Factual Allegations |
| 14 | Count I: ADA Disability Discrimination (TPFE) |
| 16 | Count II: ADA Disability Discrimination (LAV Services) |
| 18 | Count III: ADA Retaliation (TPFE) |
| 20 | Count IV: ADA Retaliation (LAV Services) |
| 22 | Count V: FMLA Retaliation (TPFE) |

| 24 | Count VI: FMLA Retaliation (LAV Services) |
| 26 | Count VII: FMLA Retaliation (Richard Zeitlin) |
| | **Maglione's Claims:** |
| 28 | Factual Allegations |
| 32 | Count VIII: ADA Disability Discrimination (TPFE) |
| 34 | Count IX: ADA Disability Discrimination (LAV Services) |
| 37 | Count X: ADA Retaliation (TPFE) |
| 39 | Count XI: ADA Retaliation (LAV Services) |
| 42 | Count XII: FMLA Interreference (TPFE) |
| 44 | Count XIII: FMLA Interreference (LAV Services) |
| 46 | Count XIV: FMLA Interreference (Richard Zeitlin) |
| 48 | Count XV: FMLA Retaliation (TPFE) |
| 50 | Count XVI: FMLA Retaliation (LAV Services) |
| 53 | Count XVII: FMLA Retaliation (Richard Zeitlin) |
| 56 | Count XVIII: COBRA & ERISA Violations (TPFE) |

| 57 | Count XIX: COBRA & ERISA Violations (LAV Services) |

**Ridley's Claims:**

| 59 | Factual Allegations |
| 62 | Count XX: ADA Disability Discrimination (TPFE) |
| 64 | Count XXI: ADA Disability Discrimination (LAV Services) |
| 66 | Count XXII: ADA Retaliation (TPFE) |
| 69 | Count XXIII: ADA Retaliation (LAV Services) |
| 72 | Count XXIV: COBRA & ERISA Violations (TPFE) |
| 73 | Count XXV: COBRA & ERISA Violations (LAV Services) |

## PARTIES

### *Harbin*

2.     Plaintiff James Harbin is a disabled male over the age of nineteen (19) years and a citizen of Talladega County, Alabama. Plaintiff was employed by Defendant TPFE, Inc. ("TPFE") from May 2014 until he was wrongfully terminated in March 2020.

### *Maglione*

3.      Plaintiff Shonnie Maglione is a disabled female over the age of nineteen (19) years and a citizen of Talladega County, Alabama. Plaintiff was employed by Defendant TPFE, Inc. ("TPFE") from October 2006 until she was wrongfully terminated in July 2020.

### *Ridley*

4.      Plaintiff Tina Ridley is a disabled female over the age of nineteen (19) years and a citizen of Talladega County, Alabama. Plaintiff was employed by Defendant TPFE, Inc. ("TPFE") from 2015 until she was wrongfully terminated in March 2020.

### *TPFE*

5.      Defendant TPFE, Inc. is a telemarketing company that is incorporated and doing business in Alabama. At all times relevant to this action, Plaintiffs worked at TPFE's office located in Sylacauga, Alabama.

6.      TPFE engaged in an industry affecting commerce and has fifteen (15) or more employees for twenty (20) or more calendar weeks per year within the meaning of the ADA.

7.      TPFE is an employer for the purposes of the ADA.

8.      TPFE has fifty (50) or more employees for twenty (20) or more calendar weeks per year within the meaning of the FMLA.

9.  TPFE is an employer for the purposes of the FMLA.

10.  TPFE sponsored a group insurance plan for its employees and employed more than 20 employees at all relevant times.

11.  TPFE is an employer for the purposes of the COBRA and ERISA.

### *LAV Services*

12.  Defendant LAV Services, LLC ("LAV Services") is a telemarketing company that is incorporated in Nevada and doing business in Alabama.

13.  TPFE is operating and doing business as LAV Services in Alabama.

14.  LAV Services is engaged in an industry affecting commerce and has fifteen (15) or more employees for twenty (20) or more calendar weeks per year within the meaning of the ADA.

15.  LAV Services is an employer for the purposes of the ADA.

16.  LAV Services has fifty (50) or more employees for twenty (20) or more calendar weeks per year within the meaning of the FMLA.

17.  LAV Services is an employer for the purposes of the FMLA.

18.  LAV Services sponsors a group insurance plan for its employees and employs more than 20 employees.

19.  LAV Services is an employer for the purposes of the COBRA and ERISA.

### *Richard Zeitlin*

6

20.     Defendant Richard Zeitlin (Zeitlin) is the owner of TPFE and LAV Services.  At all times relevant to this action, Zeitlin owned and operated TPFE and LAV Services.

21.     Zeitlin has fifty (50) or more employees for twenty (20) or more calendar weeks per year within the meaning of the FMLA.

22.     Zeitlin is an employer for the purposes of the FMLA.

## ADMINISTRATIVE REMEDIES

### *Harbin*

23.     Plaintiff James Harbin timely filed a charge of discrimination against TPFE with the U.S. Equal Employment Opportunity Commission ("EEOC"), Charge Number 420-2020-02874 **(Attached herein as Exhibit A).  On July 20, 2021, the EEOC District Director issued a Determination in favor of Plaintiff James Harbin on his claims of discrimination set forth in his Charge. (Attached herein as Exhibit B).**

24.     On August 13, 2021 the EEOC issued Plaintiff a Notice of Right to Sue. This Right to Sue was received by Plaintiff via U.S. Mail on or about August 16, 2021 **(Attached herein as Exhibit C).**

25.     Plaintiff timely filed this action within ninety (90) days of his receipt of the Notice of Right to Sue.

### *Maglione*

7

26.     Plaintiff Shonnie Maglione timely filed a charge of discrimination against TPFE with the U.S. Equal Employment Opportunity Commission ("EEOC"), Charge Number 420-2021-00329 **(Attached herein as Exhibit D). On July 20, 2021, the EEOC District Director issued a Determination in favor of Plaintiff Shonnie Maglione on her claims of discrimination set forth in her Charge. (Attached herein as Exhibit E).**

27.     On August 13, 2021 the EEOC issued Plaintiff a Notice of Right to Sue. This Right to Sue was received by Plaintiff via U.S. Mail on or about August 16, 2021 **(Attached herein as Exhibit F).**

28.     Plaintiff timely filed this action within ninety (90) days of her receipt of the Notice of Right to Sue.

### *Ridley*

29.     Plaintiff Tina Ridley timely filed a charge of discrimination against TPFE with the U.S. Equal Employment Opportunity Commission ("EEOC"), Charge Number 420-2020-02876 **(Attached herein as Exhibit G). On July 20, 2021, the EEOC District Director issued a Determination in favor of Plaintiff Tina Ridley on her claims of discrimination set forth in her Charge. (Attached herein as Exhibit H).**

8

30.     On August 13, 2021 the EEOC issued Plaintiff a Notice of Right to Sue. This Right to Sue was received by Plaintiff via U.S. Mail on or about August 16, 2021 (**Attached herein as Exhibit I).**

31.     Plaintiff timely filed this action within ninety (90) days of her receipt of the Notice of Right to Sue.

## JURISDICTION AND VENUE

32.     This court has jurisdiction over this cause of action pursuant to 28 U.S.C. § 1331, 28 U.S.C. §§ 2201 and 2202, 28 U.S.C. § 139 and Ala. R. Civ. P. 4.2, the ADA, FMLA, COBRA, and ERISA.

33.     This action is brought within the judicial district wherein the unlawful employment practices were committed, making venue proper under 28 U.S.C. § 1391.

### *TPFE*

34.     TPFE is located and doing business within this judicial district and division. This action is brought within the judicial district wherein the unlawful employment practices were committed, making venue proper under 28 U.S.C. § 1391.

### *LAV Services*

35.     TPFE is operating and doing business as LAV Services within this judicial district.

36.   LAV Services employs former TPFE employees that were employed at the TPFE office located in Sylacauga, Alabama.

37.   LAV Services conducts the same business as TPFE.

38.   LAV Services provides telemarketing services for the same clients as TPFE.

39.   LAV Services and TPFE are owned by Defendant Richard Zeitlin.

40.   LAV Services' contacts within this judicial district are continuous and systematic and render LAV Services at home in this forum.

41.   Plaintiff's claims arise out of and relate to LAV Services' contacts in this forum.

42.   Upon information and belief, LAV Services had notice of Plaintiffs' claims against TPFE prior to becoming TPFE's successor.

43.   Upon information and belief, LAV Services is able to provide the relief requested by Plaintiffs.

44.   LAV Services purposefully availed itself to the privileged of conducting activities within the forum state.

45.   LAV Services has sufficient contacts with this forum making jurisdiction and venue proper.

### *Richard Zeitlin*

46.   Zeitlin owns and operates TPFE and LAV Services.

10

47.   Zeitlin is operating and conducting business within this judicial district and division.

48.   Zeitlin employs employees located within this judicial district.

49.   Zeitlin's contacts within this judicial district are continuous and systematic and render him at home in this forum.

50.   Plaintiffs' claims arise out of and relate to Zeitlin's contacts in this forum.

51.   Zeitlin purposefully availed himself to the privileged of conducting activities within the forum state.

52.   Zeitlin has sufficient contacts with this forum making jurisdiction and venue proper.

## PLAINTIFF JAMES HARBIN'S CLAIMS
## FACTUAL ALLEGATIONS

53.   Harbin is a disabled male diagnosed with a blood clotting disorder and heart condition.

54.   Harbin's medical conditions substantially limit one (1) or more of his major life activities.

55.   On or about May 2014, Harbin was hired by TPFE for a janitorial/maintenance position for its office located in Sylacauga, Alabama.

56.    On or about May 2016, Harbin had coronary bypass surgery related to his serious medical conditions. Prior to surgery, Harbin informed TPFE about his serious medical conditions.

57.    On or about January 2020, Harbin was notified by his physician that several blood clots had formed in his body. Harbin's physician recommended he undergo surgery to remove the blood clots.

58.    Harbin was eligible for FMLA leave in January 2020.

59.    On or about January 2020, Harbin notified TPFE of the blood clots found in his body and requested medical leave for surgery and post-surgery recovery.

60.    Harbin's request for medical leave was approved.

61.    Harbin had surgery to remove the blood clots on or about February 11, 2020.

62.    Harbin returned to work in early March 2020.

63.    On the first day Harbin returned to work from medical leave, TPFE terminated his employment.

64.    TPFE told Harbin that his employment was terminated due to a reduction in force. Harbin and one other employee (Plaintiff Tina Ridley) were the only employees subject to TPFE's supposed reduction in force.

65.     The other employee terminated as a result of TPFE's supposed reduction in force was Plaintiff Tina Ridley. At this time Ridley was on medical leave for treatment for a serious medical condition.

66.     Prior to his termination, Harbin did not have any disciplinary write ups.

67.     TPFE targeted Harbin for termination and discriminated against him due to his disability in violation of the ADA.

68.     TPFE retaliated against Harbin for requesting temporary medical leave to address complications related to his serious health condition that qualified as a disability under the ADA.

69.     TPFE retaliated against Harbin for exercising his rights protected by the FMLA.

70.     Upon information and belief, a few months after Harbin filed an EEOC Charge asserting violations of the ADA and FMLA, TPFE began operating business as LAV Services.

71.     Upon information and belief, LAV Services conducts the same business as TPFE, is operated by the same managers, employs former TPFE employees, and represents former TPFE clients.

72.     TPFE and LAV Services are owned by the same individual, Richard Zeitlin.

13

73.     Upon information and belief, LAV Services had notice of Harbin's claims against TPFE prior to becoming TPFE's successor and is able to provide the relief requested herein.

74.     LAV Services is liable for Harbin's claims asserted herein pursuant to successor liability and/or alter ego theory.

75.     At all times relevant to Harbin's employment, Richard Zeitlin owned TPFE and acted in the interests of the company.

76.     Upon information and belief, Richard Zeitlin maintained control over significant aspects of TPFE's daily functions.

77.     Upon information and belief, Richard Zeitlin maintains control over significant aspects of LAV Services' daily functions

78.     Richard Zeitlin is individually liable for Harbin's FMLA retaliation claims.

## HARBIN COUNT I-ADA DISABILITY DISCRIMINATION (TPFE)

79.     This is a claim against TPFE to redress the unlawful employment practice of disability discrimination protected by the Americans with Disability Act of 1990 (ADA), 42 U.S.C. § 12101 *et seq.*

80.     This is a claim against TPFE for discriminating against Harbin based upon his disability.

14

81.   Harbin is a disabled male with a serious blood clotting disorder and heart condition.

82.   Harbin's medical conditions substantially limit one (1) or more of his major life activities.

83.   At all times relevant to this action, TPFE was aware that Harbin was a qualified individual with a disability.

84.   On or about January 2020, Harbin requested temporary medical leave to have surgery to remove blood clots in his legs.

85.   Harbin's request for temporary medical leave was a reasonable accommodation request.

86.   Harbin was able to perform the essential duties and responsibilities of his janitorial /maintenance position with an accommodation of temporary medical leave.

87.   The day Harbin returned from temporary medical leave, TPFE terminated his employment due to a supposed reduction in force.

88.   Harbin and one other employee who also had a disability were the only employees subject to TPFE's supposed reduction in force.

89.   TPFE targeted and terminated Harbin's employment due to his disability.

90.    Harbin's similarly situated co-workers who were not disabled were not subject to termination or the purported "reduction in force."

91.    As a proximate result of TPFE's unlawful intentional discrimination, Harbin suffered loss of pay and benefits, financial loss, economic loss, shame, humiliation and emotional distress.

92.    Harbin seeks declaratory and injunctive relief, an award of compensatory and punitive damages for mental anguish, reinstatement, back pay, front pay, costs, attorneys' fees, and any and all such further relief as the trier of fact may assess.

## HARBIN COUNT II-ADA DISABILITY DISCRIMINATION
### (LAV Services)

93.    This is a claim against LAV Services to redress the unlawful employment practice of disability discrimination protected by the Americans with Disability Act of 1990 (ADA), 42 U.S.C. § 12101 *et seq.*

94.    This is a claim against LAV Services asserting its liability for TPFE's discrimination against Harbin based upon his disability.

95.    Harbin is a disabled male with a serious blood clotting disorder and heart condition.

96.    Harbin's medical conditions substantially limit one (1) or more of his major life activities.

16

97.   At all times relevant to this action, TPFE was aware that Harbin was a qualified individual with a disability.

98.   On or about January 2020, Harbin requested temporary medical leave to have surgery to remove blood clots in his legs.

99.   Harbin's request for temporary medical leave was a reasonable accommodation request.

100.   Harbin was able to perform the essential duties and responsibilities of his janitorial /maintenance position with an accommodation of temporary medical leave.

101.   The day Harbin returned from temporary medical leave, TPFE terminated his employment due to a supposed reduction in force.

102.   Harbin and one other employee who also had a disability were the only employees subject to TPFE's supposed reduction in force.

103.   TPFE targeted and terminated Harbin's employment due to his disability.

104.   Harbin's similarly situated co-workers who were not disabled were not subject to termination or the purported "reduction in force."

105.   Upon information and belief, a few months after Harbin filed an EEOC Charge asserting violations of the ADA and FMLA, TPFE began operating business as LAV Services.

106.    Upon information and belief, LAV Services conducts the same business as TPFE, is operated by the same managers, employs former TPFE employees, and represents former TPFE clients.

107.    Upon information and belief, LAV Services had notice of Harbin's claims against TPFE prior to becoming TPFE's successor and is able to provide the relief requested herein.

108.    LAV Services is liable for Harbin's claims based upon successor liability and/or alter ego theory.

109.    As a proximate result of TPFE's unlawful intentional discrimination, Harbin suffered loss of pay and benefits, financial loss, economic loss, shame, humiliation and emotional distress and LAV Services is liable for said damages.

110.    Harbin seeks declaratory and injunctive relief, an award of compensatory and punitive damages for mental anguish, reinstatement, back pay, front pay, costs, attorneys' fees, and any and all such further relief as the trier of fact may assess.

## **HARBIN COUNT III- ADA RETALIATION**

## **(TPFE)**

111.    This is a claim against TPFE to redress the unlawful employment practice of retaliation protected by the Americans with Disability Act of 1990 (ADA), 42 U.S.C. § 12101 *et seq.*

112. This is a claim against TPFE for retaliating against Harbin for requesting a reasonable accommodation related to his serious medical conditions.

113. Harbin is a disabled male with a serious blood clotting disorder and heart condition.

114. Harbin's medical conditions substantially limit one (1) or more of his major life activities.

115. At all times relevant to this action, TPFE was aware that Harbin was a qualified individual with a disability.

116. On or about January 2020, Harbin requested temporary medical leave to have surgery to remove blood clots in his legs.

117. Harbin's request for temporary medical leave was a reasonable accommodation request.

118. Harbin was able to perform the essential duties and responsibilities of his janitorial/maintenance position with an accommodation of temporary medical leave.

119. The day Harbin returned from temporary medical leave, TPFE terminated his employment due to a supposed reduction in force.

120. Harbin and one other employee who had also requested medical leave as a reasonable accommodation were the only employees subject to TPFE's supposed reduction in force.

19

121.   TPFE retaliated against Harbin for requesting temporary medical leave as a reasonable accommodation by terminating his employment.

122.   Harbin's similarly situated co-workers who were not disabled were not subject to termination or the purported "reduction in force."

123.   As a proximate result of TPFE's unlawful intentional discrimination, Harbin suffered loss of pay and benefits, financial loss, economic loss, shame, humiliation and emotional distress.

124.   Harbin seeks declaratory and injunctive relief, an award of compensatory and punitive damages for mental anguish, reinstatement, back pay, front pay, costs, attorneys' fees, and any and all such further relief as the trier of fact may assess.

## COUNT IV- ADA RETAILATION

## (LAV SERVICES)

125.   This is a claim against LAV Services to redress the unlawful employment practice of retaliation protected by the Americans with Disability Act of 1990 (ADA), 42 U.S.C. § 12101 *et seq.*

126.   This is a claim against LAV Services asserting liability for TPFE's retaliation against Harbin for requesting a reasonable accommodation related to his serious medical conditions in violation of the ADA.

127.   Harbin is a disabled male with a serious blood clotting disorder and heart condition.

128.   Harbin's medical conditions substantially limit one (1) or more of his major life activities.

129.   At all times relevant to this action, TPFE was aware that Harbin was a qualified individual with a disability.

130.   On or about January 2020, Harbin requested temporary medical leave to have surgery to remove blood clots in his legs.

131.   Harbin's request for temporary medical leave was a reasonable accommodation request.

132.   Harbin was able to perform the essential duties and responsibilities of his janitorial /maintenance position with an accommodation of temporary medical leave.

133.   The day Harbin returned from temporary medical leave, TPFE terminated his employment due to a supposed reduction in force.

134.   Harbin and one other employee who had also requested medical leave as a reasonable accommodation were the only employees subject to TPFE's supposed reduction in force.

135.   TPFE retaliated against Harbin for requesting temporary medical leave as a reasonable accommodation by terminating his employment.

136.   Harbin's similarly situated co-workers who were not disabled were not subject to termination or the purported "reduction in force."

137.   Upon information and belief, a few months after Harbin filed an EEOC Charge asserting violations of the ADA and FMLA, TPFE began operating business as LAV Services.

138.   Upon information and belief, LAV Services conducts the same business as TPFE, is operated by the same managers, employs former TPFE employees, and represents former TPFE clients.

139.   Upon information and belief, LAV Services had notice of Harbin's claims against TPFE prior to becoming TPFE's successor and is able to provide the relief requested herein.

140.   LAV Services is liable for Harbin's claims based upon successor liability and/or alter ego theory.

141.   As a proximate result of TPFE's unlawful intentional discrimination, Harbin suffered loss of pay and benefits, financial loss, economic loss, shame, humiliation and emotional distress and LAV Services is liable for said damages.

142.   Harbin seeks declaratory and injunctive relief, an award of compensatory and punitive damages for mental anguish, reinstatement, back pay, front pay, costs, attorneys' fees, and any and all such further relief as the trier of fact may assess.

## HARBIN COUNT V- FMLA RETALIATION

## (TPFE)

143.  This is a claim against TPFE to redress the unlawful employment practice of retaliation protected by the Family and Medical Leave Act (FMLA), 29 U.S.C. § 2601 *et. seq.*

144.  As of January 2020, Harbin had worked for TFPE an excess of twelve (12) months.

145.  As of January 2020, Harbin had worked for TFPE an excess of 1,250 hours in the preceding twelve (12) months for TPFE.

146.  As of January 2020, Harbin was eligible for FMLA leave.

147.  TPFE employed fifty (50) or more employees at the location in which Harbin worked.

148.  TPFE was an employer for the purposes of FMLA.

149.  In January 2020, Harbin requested FMLA leave related to his serious medical conditions.

150.  Harbin returned from FMLA leave in early March 2020.

151.  The day of Harbin's return from FMLA leave, TPFE terminated his employment due to a supposed reduction in force.

152.   Harbin and one other employee who also had a disability and was on FMLA leave, were the only employees subject to TPFE's supposed reduction in force.

153.   Harbin's termination was unlawful retaliation in violation of the FMLA.

154.   As a proximate result of TPFE's unlawful intentional discrimination, Harbin has suffered loss of pay and benefits, financial loss, and economic loss.

155.   Harbin seeks declaratory relief, award of liquidated damages, back pay, front pay, costs, attorneys' fees, and any and all such further relief as the trier of fact may assess.

## HARBIN COUNT VI- FMLA RETALIATION

### (LAV Services)

156.   This is a claim against LAV Services to redress the unlawful employment practice of retaliation protected by the Family and Medical Leave Act (FMLA), 29 U.S.C. § 2601 *et. seq.*

157.   At all times relevant to this action, Harbin was employed by TPFE.

158.   As of January 2020, Harbin had worked for TPFE an excess of twelve (12) months.

159.   As of January 2020, Harbin had worked for TFPE an excess of 1,250 hours in the preceding twelve (12) months for TPFE.

160.  As of January 2020, Harbin was eligible for FMLA leave.

161.  TPFE employed fifty (50) or more employees at the location in which Harbin worked.

162.  TPFE was an employer for the purposes of FMLA.

163.  In January 2020, Harbin requested FMLA leave related to his serious medical conditions.

164.  Harbin returned from FMLA leave in early March 2020.

165.  The day of Harbin's return from FMLA leave, TPFE terminated his employment due to a supposed reduction in force.

166.  Harbin and one other employee who also had a disability and was on FMLA leave, were the only employees subject to TPFE's supposed reduction in force.

167.  Harbin's termination was unlawful retaliation in violation of the FMLA.

168.  Upon information and belief, a few months after Harbin filed an EEOC Charge asserting violations of the ADA and FMLA, TPFE began operating business as LAV Services.

169.  Upon information and belief, LAV Services conducts the same business as TPFE, is operated by the same managers, employs former TPFE employees, and represents former TPFE clients.

170.   Upon information and belief, LAV Services had notice of Harbin's claims against TPFE prior to becoming TPFE's successor and is able to provide the relief requested herein.

171.   LAV Services is liable for Harbin's claims based upon successor liability and/or alter ego theory.

172.   As a proximate result of TPFE's unlawful intentional discrimination, Harbin has suffered loss of pay and benefits, financial loss, and economic loss and LAV Services is liable for said damages.

173.   Harbin seeks declaratory relief, award of liquidated damages, back pay, front pay, costs, attorneys' fees, and any and all such further relief as the trier of fact may assess.

## HARBIN COUNT VII- FMLA RETALIATION

### (Richard Zeitlin)

174.   This is a claim against Richard Zeitlin to redress the unlawful employment practice of retaliation protected by the Family and Medical Leave Act (FMLA), 29 U.S.C. § 2601 *et. seq.*

175.   At all times relevant to this action, Harbin was employed by TPFE and Richard Zeitlin owned TPFE.

176.   As of January 2020, Harbin had worked for TPFE an excess of twelve (12) months.

177.   As of January 2020, Harbin had worked for TFPE an excess of 1,250 hours in the preceding twelve (12) months for TPFE.

178.   As of January 2020, Harbin was eligible for FMLA leave.

179.   TPFE employed fifty (50) or more employees at the location in which Harbin worked.

180.   TPFE was an employer for the purposes of FMLA.

181.   In January 2020, Harbin requested FMLA leave related to his serious medical conditions.

182.   Harbin returned from FMLA leave in early March 2020.

183.   The day of Harbin's return from FMLA leave, TPFE terminated his employment due to a supposed reduction in force.

184.   Harbin and one other employee who also had a disability and was on FMLA leave, were the only employees subject to TPFE's supposed reduction in force.

185.   Harbin's termination was unlawful retaliation in violation of the FMLA.

186.   At all times relevant to Harbin's employment, Richard Zeitlin owned TPFE and acted in the interests of the company.

187.   Upon information and belief, Richard Zeitlin maintained control over significant aspects of TPFE's daily functions.

188.   Upon information and belief, Richard Zeitlin maintains control over significant aspects of LAV Services' daily functions

189.   Richard Zeitlin owns LAV Services and acts in the interests of the company.

190.   Richard Zeitlin is individually liable for Harbin's claims against TPFE.

191.   As a proximate result of TPFE's unlawful intentional discrimination, Harbin has suffered loss of pay and benefits, financial loss, and economic loss and Richard Zeitlin is liable for said damages.

192.   Harbin seeks declaratory relief, award of liquidated damages, back pay, front pay, costs, attorneys' fees, and any and all such further relief as the trier of fact may assess.

## PLAINTIFF SHONNIE MAGLIONE'S CLAIMS

## FACTUAL ALLEGATIONS

193.   Maglione is a disabled female diagnosed with Human Papillomavirus (HPV) and Cervical Intraepithelial Neoplasia 3 (CIN 3) in early 2020.

194.   Maglione's medical conditions substantially limit one (1) or more of her major life activities.

195.   Maglione was hired by TPFE in October 2013.

196.   Over the course of her employment with TPFE, Maglione was promoted and/or transitioned to different positions.

197.   In 2013, Maglione was promoted to the Office Manager position and held that position for the duration of her employment with TPFE.

198.   Treatment of Maglione's serious medical conditions required that she have a hysterectomy, so in March 2020, Maglione requested six (6) weeks of medical leave for surgery and post-surgery recovery.

199.   Maglione's request for temporary medical leave was a reasonable accommodation related to her serious medical conditions.

200.   TPFE denied Maglione's request for six (6) weeks of medical leave and only allowed her one (1) week of leave.

201.   At the time of Maglione's request for six (6) weeks of medical leave, she was eligible for twelve (12) weeks of FMLA protected leave.

202.   In April 2020, Maglione had surgery related to her serious medical conditions.

203.   Maglione returned to work the week following her surgery and was allowed to work from home.

204.   Soon after Maglione returned from medical leave, TPFE increased her workload by requiring her to make telemarketing calls.

205.   Prior to April 2020, Maglione was not required to make telemarketing calls.

206.   In July 2020, TPFE terminated Maglione's employment.

29

207. Maglione was told by the General Manager, Lee Norris, that her termination was due to "revenue." Mr. Norris admitted that he did not know why Maglione's employment was terminated, nor was he aware of a conflict with her position and/or TPFE's revenue.

208. After Mr. Norris informed Maglione about her termination, he provided her with an Employee Termination Notice that stated her position was no longer available. Again, Mr. Norris admitted that he was unaware of any change to Maglione's employment and/or position prior to her termination.

209. Prior to her termination, Maglione did not have any disciplinary write ups.

210. After terminating her employment, TPFE did not provide Maglione a COBRA notice.

211. Prior to her termination, Maglione participated in TPFE's group health insurance plan.

212. TPFE targeted and discriminated against Maglione due to her disability in violation of the ADA.

213. TPFE retaliated against Maglione for requesting temporary medical leave for surgery related to her serious health conditions that qualify as disabilities under the ADA.

214. TPFE interfered with Maglione's rights protected by FMLA.

215. TPFE retaliated against Maglione for exercising her rights protected by the FMLA.

216. TPFE violated COBRA by failing to provide Maglione proper notice of her COBRA rights.

217. Upon information and belief, a few months after Maglione filed an EEOC Charge asserting violations of the ADA and FMLA, TPFE began operating business as LAV Services.

218. Upon information and belief, LAV Services conducts the same business as TPFE, is operated by the same managers, employs former TPFE employees, and represents former TPFE clients.

219. TPFE and LAV Services are owned by the same individual, Richard Zeitlin.

220. Upon information and belief, LAV Services had notice of Maglione's claims against TPFE prior to becoming TPFE's successor and is able to provide the relief requested herein.

221. LAV Services is liable for Maglione's claims asserted herein pursuant to successor liability and/or alter ego theory.

222. At all times relevant to Maglione's employment, Richard Zeitlin owned TPFE and acted in the interests of the company.

31

223.   Upon information and belief, Richard Zeitlin maintained control over significant aspects of TPFE's daily functions.

224.   Upon information and belief, Richard Zeitlin maintains control over significant aspects of LAV Services' daily functions

225.   Richard Zeitlin is individually liable for Maglione's FMLA retaliation claims.

## MAGLIONE COUNT VIII-ADA DISABILITY DISCRIMINATION (TPFE)

226.   This is a claim against TPFE to redress the unlawful employment practice of disability discrimination protected by the Americans with Disability Act of 1990 (ADA), 42 U.S.C. § 12101 *et seq.*

227.   This is a claim against TPFE for discriminating against Maglione based upon her disability.

228.   Maglione is a disabled female with human papillomavirus (HPV) and cervical intraepithelial neoplasia 3 (CIN 3).

229.   Maglione's medical conditions substantially limit one (1) or more of her major life activities.

230.   At all times relevant to this action, TPFE was aware that Maglione was a qualified individual with a disability.

231.   On or about March 2020, Maglione requested temporary medical leave related her serious medical conditions.

232.   Maglione's request for temporary medical leave was a reasonable accommodation request.

233.   Maglione was able to perform the essential duties and responsibilities of her Office Manager position with an accommodation of temporary medical leave.

234.   TPFE denied Maglione's reasonable accommodation request for six (6) weeks of medical leave and only allowed her one (1) week of medical leave.

235.   When Maglione returned to work from one (1) week of temporary medical leave, TPFE increased her workload by requiring her to make telemarketing calls.

236.   Prior to April 2020, Maglione was not required to make telemarketing calls.

237.   In July 2020, TPFE terminated Maglione's employment.

238.   Maglione was told by the General Manager, Lee Norris, that her termination was due to "revenue." Mr. Norris admitted that he did not know why Maglione's employment was terminated, nor was he aware of a conflict with her position and/or TPFE's revenue.

239.   After Mr. Norris informed Maglione about her termination, he provided her with an Employee Termination Notice that stated her position was no longer

available. Again, Mr. Norris admitted that he was unaware of any change to Maglione's employment and/or her position prior to her termination.

240.   TPFE targeted Maglione for termination and discriminated against her due to her disability in violated of the ADA.

241.   TPFE interfered with Maglione's rights protected by the ADA.

242.   As a proximate result of TPFE's unlawful intentional discrimination, Maglione suffered loss of pay and benefits, financial loss, economic loss, shame, humiliation and emotional distress.

243.   Maglione seeks declaratory and injunctive relief, an award of compensatory and punitive damages for mental anguish, reinstatement, back pay, front pay, costs, attorneys' fees, and any and all such further relief as the trier of fact may assess.

## MAGLIONE COUNT IX-ADA DISABILITY DISCRIMINATION

## (LAV Services)

244.   This is a claim against LAV Services to redress the unlawful employment practice of disability discrimination protected by the Americans with Disability Act of 1990 (ADA), 42 U.S.C. § 12101 *et seq.*

245.   This is a claim against LAV Services asserting liability for TPFE's discrimination against Maglione based upon her disability.

34

246.   Maglione is a disabled female with human papillomavirus (HPV) and cervical intraepithelial neoplasia 3 (CIN 3).

247.   Maglione's medical conditions substantially limit one (1) or more of her major life activities.

248.   At all times relevant to this action, TPFE was aware that Maglione was a qualified individual with a disability.

249.   On or about March 2020, Maglione requested temporary medical leave related to her serious medical conditions.

250.   Maglione's request for temporary medical leave was a reasonable accommodation request.

251.   Maglione was able to perform the essential duties and responsibilities of her Office Manager position with an accommodation of temporary medical leave.

252.   TPFE denied Maglione's reasonable accommodation request for six (6) weeks of medical leave and only allowed her one (1) week of medical leave.

253.   When Maglione returned to work from one (1) week of temporary medical leave, TPFE increased her workload by requiring her to make telemarketing calls.

254.   Prior to April 2020, Maglione was not required to make telemarketing calls.

255.   In July 2020, TPFE terminated Maglione's employment.

256.  Maglione was told by the General Manager, Lee Norris, that her termination was due to "revenue." Mr. Norris admitted that he did not know why Maglione's employment was terminated, nor was he aware of a conflict with her position and/or TPFE's revenue.

257.  After Mr. Norris informed Maglione about her termination, he provided her with an Employee Termination Notice that stated her position was no longer available. Again, Mr. Norris admitted that he was unaware of any change to Maglione's employment and/or her position prior to her termination.

258.  TPFE targeted Maglione for termination and discriminated against her due to her disability in violated of the ADA.

259.  TPFE interfered with Maglione's rights protected by the ADA.

260.  Upon information and belief, a few months after Maglione filed an EEOC Charge asserting violations of the ADA and FMLA, TPFE began operating business as LAV Services.

261.  Upon information and belief, LAV Services conducts the same business as TPFE, is operated by the same managers, employs former TPFE employees, and represents former TPFE clients.

262.  Upon information and belief, LAV Services had notice of Maglione's claims against TPFE prior to becoming TPFE's successor and is able to provide the relief requested herein.

263. LAV Services is liable for Maglione's claims based upon successor liability and/or alter ego theory.

264. As a proximate result of TPFE's unlawful intentional discrimination, Maglione suffered loss of pay and benefits, financial loss, economic loss, shame, humiliation and emotional distress and LAV Services is liable for said damages.

265. Maglione seeks declaratory and injunctive relief, an award of compensatory and punitive damages for mental anguish, reinstatement, back pay, front pay, costs, attorneys' fees, and any and all such further relief as the trier of fact may assess.

## MAGLIONE COUNT X- ADA RETAILATION

## (TPFE)

266. This is a claim against TPFE to redress the unlawful employment practice of retaliation protected by the Americans with Disability Act of 1990 (ADA), 42 U.S.C. § 12101 *et seq.*

267. This is a claim against TPFE for retaliating against Maglione for requesting a reasonable accommodation.

268. Maglione is a disabled female with human papillomavirus (HPV) and cervical intraepithelial neoplasia 3 (CIN 3).

269. Maglione's medical conditions substantially limit one (1) or more of her major life activities.

270.   At all times relevant to this action, TPFE was aware that Maglione was a qualified individual with a disability.

271.   On or about March 2020, Maglione requested temporary medical leave related to her serious medical conditions.

272.   Maglione's request for temporary medical leave was a reasonable accommodation request.

273.   Maglione was able to perform the essential duties and responsibilities of her Office Manager position with an accommodation of temporary medical leave.

274.   TPFE denied Maglione's reasonable accommodation request for six (6) weeks of medical leave and only allowed her one (1) week of medical leave.

275.   When Maglione returned to work from temporary medical leave, TPFE increased her workload by requiring her to make telemarketing calls.

276.   Prior to April 2020, Maglione was not required to make telemarketing calls.

277.   In July 2020, TPFE terminated Maglione's employment.

278.   Maglione was told by the General Manager, Lee Norris, that her termination was due to "revenue." Mr. Norris admitted that he did not know why Maglione's employment was terminated, nor was he aware of a conflict with her position and/or TPFE's revenue.

279.   After Mr. Norris informed Maglione about her termination, he provided her with an Employee Termination Notice that stated her position was no longer available. Again, Mr. Norris admitted that he was unaware of any change to Maglione's employment and/or her position prior to her termination.

280.   TPFE retaliated against Maglione for requesting temporary medical leave as a reasonable accommodation by terminating her employment.

281.   Maglione's similarly situated co-workers who were not disabled were not subject to termination for purported changes in revenue and/or position availability.

282.   As a proximate result of TPFE's unlawful intentional discrimination, Maglione suffered loss of pay and benefits, financial loss, economic loss, shame, humiliation and emotional distress.

283.   Maglione seeks declaratory and injunctive relief, an award of compensatory and punitive damages for mental anguish, reinstatement, back pay, front pay, costs, attorneys' fees, and any and all such further relief as the trier of fact may assess.

## **MAGLIONE COUNT XI- ADA RETALIATION**

### **(LAV Services)**

284.  This is a claim against LAV Services to redress the unlawful employment practice of retaliation protected by the Americans with Disability Act of 1990 (ADA), 42 U.S.C. § 12101 *et seq.*

285.  This is a claim against LAV Services asserting liability for TPFE's retaliation against Maglione for requesting a reasonable accommodation related to her serious medical conditions in violation of the ADA.

286.  Maglione is a disabled female with human papillomavirus (HPV) and cervical intraepithelial neoplasia 3 (CIN 3).

287.  Maglione's medical conditions substantially limit one (1) or more of her major life activities.

288.  At all times relevant to this action, TPFE was aware that Maglione was a qualified individual with a disability.

289.  On or about March 2020, Maglione requested temporary medical leave related to her serious medical conditions.

290.  Maglione's request for temporary medical leave was a reasonable accommodation request.

291.  Maglione was able to perform the essential duties and responsibilities of her Office Manager position with an accommodation of temporary medical leave.

292.  TPFE denied Maglione's reasonable accommodation request for six (6) weeks of medical leave and only allowed her one (1) week of medical leave.

293.   When Maglione returned to work from temporary medical leave, TPFE increased her workload by requiring her to make telemarketing calls.

294.   Prior to April 2020, Maglione was not required to make telemarketing calls.

295.   In July 2020, TPFE terminated Maglione's employment.

296.   Maglione was told by the General Manager, Lee Norris, that her termination was due to "revenue." Mr. Norris admitted that he did not know why Maglione's employment was terminated, nor was he aware of a conflict with her position and/or TPFE's revenue.

297.   After Mr. Norris informed Maglione about her termination, he provided her with an Employee Termination Notice that stated her position was no longer available. Again, Mr. Norris admitted that he was unaware of any change to Maglione's employment and/or her position prior to her termination.

298.   TPFE retaliated against Maglione for requesting temporary medical leave as an accommodation by terminating her employment.

299.   Maglione's similarly situated co-workers who were not disabled were not subject to termination for purported changes in revenue and/or position availability.

300.   Upon information and belief, a few months after Maglione filed an EEOC Charge asserting violations of the ADA and FMLA, TPFE began operating business as LAV Services.

301.   Upon information and belief, LAV Services conducts the same business as TPFE, is operated by the same managers, employs former TPFE employees, and represents former TPFE clients.

302.   Upon information and belief, LAV Services had notice of Maglione's claims against TPFE prior to becoming TPFE's successor and is able to provide the relief requested herein.

303.   LAV Services is liable for Maglione's claims based upon successor liability and/or alter ego theory.

304.   As a proximate result of TPFE's unlawful intentional discrimination, Maglione suffered loss of pay and benefits, financial loss, economic loss, shame, humiliation and emotional distress and LAV Services is liable for said damages.

305.   Maglione seeks declaratory and injunctive relief, an award of compensatory and punitive damages for mental anguish, reinstatement, back pay, front pay, costs, attorneys' fees, and any and all such further relief as the trier of fact may assess.

## MAGLIONE COUNT XII- FMLA INTERFERENCE RETALIATION (TPFE)

306. This is a claim against TPFE to redress the unlawful employment practice of interfering with Maglione's rights protected by the Family and Medical Leave Act (FMLA), 29 U.S.C. § 2601 *et. seq.*

307. At all times relevant to this action, Maglione was employed by TPFE.

308. As of April 2020, Maglione had worked for TFPE an excess of twelve (12) months.

309. As of March 2020, Maglione had worked for TFPE an excess of 1,250 hours in the preceding twelve (12) months for TPFE.

310. As of March 2020, Maglione was eligible for FMLA leave.

311. TPFE employed fifty (50) or more employees at the location in which Maglione worked.

312. TPFE was an employer for the purposes of FMLA.

313. In March 2020, Maglione requested six (6) weeks of FMLA leave related to her serious medical conditions.

314. TPFE denied her request for six (6) weeks of FMLA leave and only allowed her one (1) week of leave, although she was eligible for twelve (12) weeks of FMLA leave.

315. In April 2020, Maglione had surgery related to her serious medical conditions and returned to work the following week.

43

316.   TPFE interfered with Maglione's rights protected by FMLA by denying her six (6) weeks of FMLA leave.

317.   As a proximate result of TPFE's unlawful intentional discrimination, Maglione has suffered loss of pay and benefits, financial loss, and economic loss.

318.   Maglione seeks declaratory relief, award of liquidated damages, back pay, front pay, costs, attorneys' fees, and any and all such further relief as the trier of fact may assess.

## MAGLIONE COUNT XIII- FMLA INTERFERENCE

### (LAV Services)

319.   This is a claim against LAV Services to redress the unlawful employment practice of interfering with Maglione's rights protected by the Family and Medical Leave Act (FMLA), 29 U.S.C. § 2601 *et. seq.*

320.   At all times relevant to this action, Maglione was employed by TPFE.

321.   As of April 2020, Maglione had worked for TFPE an excess of twelve (12) months.

322.   As of March 2020, Maglione had worked for TFPE an excess of 1,250 hours in the preceding twelve (12) months for TPFE.

323.   As of March 2020, Maglione was eligible for FMLA leave.

324.   TPFE employed fifty (50) or more employees at the location in which Maglione worked.

325.   TPFE was an employer for the purposes of FMLA.

326.   In March 2020, Maglione requested six (6) weeks of FMLA leave related to her serious medical conditions.

327.   TPFE denied her request for six (6) weeks of FMLA leave and only allowed her one (1) week of leave, although she was eligible for twelve (12) weeks of FMLA leave.

328.   In April 2020, Maglione had surgery related to her serious medical conditions and returned to work the following week.

329.   TPFE interfered with Maglione's rights protected by FMLA by denying her six (6) weeks of FMLA leave.

330.   Upon information and belief, a few months after Maglione filed an EEOC Charge asserting violations of the ADA and FMLA, TPFE began operating business as LAV Services.

331.   Upon information and belief, LAV Services conducts the same business as TPFE, is operated by the same managers, employs former TPFE employees, and represents former TPFE clients.

332.   Upon information and belief, LAV Services had notice of Maglione's claims against TPFE prior to becoming TPFE's successor and is able to provide the relief requested herein.

333. LAV Services is liable for Maglione's claims based upon successor liability and/or alter ego theory.

334. As a proximate result of TPFE's unlawful intentional discrimination, Maglione has suffered loss of pay and benefits, financial loss, and economic loss and LAV Services is liable for said damages.

335. Maglione seeks declaratory relief, award of liquidated damages, back pay, front pay, costs, attorneys' fees, and any and all such further relief as the trier of fact may assess.

## MAGLIONE COUNT XIV- FMLA INTERFERENCE
### (Richard Zeitlin)

336. This is a claim against Richard Zeitlin to redress the unlawful employment practice of interfering with Maglione's rights protected by the Family and Medical Leave Act (FMLA), 29 U.S.C. § 2601 *et. seq.*

337. At all times relevant to this action, Maglione was employed by TPFE and Richard Zeitlin owned TPFE.

338. As of April 2020, Maglione had worked for TFPE an excess of twelve (12) months.

339. As of March 2020, Maglione had worked for TFPE an excess of 1,250 hours in the preceding twelve (12) months for TPFE.

340. As of March 2020, Maglione was eligible for FMLA leave.

341.   TPFE employed fifty (50) or more employees at the location in which Maglione worked.

342.   TPFE was an employer for the purposes of FMLA.

343.   In March 2020, Maglione requested six (6) weeks of FMLA leave related to her serious medical conditions.

344.   TPFE denied her request for six (6) weeks of FMLA leave and only allowed her one (1) week of leave, although she was eligible for twelve (12) weeks of FMLA leave.

345.   In April 2020, Maglione had surgery related to her serious medical conditions and returned to work the following week.

346.   TPFE interfered with Maglione's rights protected by FMLA by denying her twelve (12) weeks of FMLA leave.

347.   At all times relevant to Maglione's employment, Richard Zeitlin owned TPFE and acted in the interests of the company.

348.   Upon information and belief, Richard Zeitlin maintained control over significant aspects of TPFE's daily functions.

349.   Upon information and belief, Richard Zeitlin maintains control over significant aspects of LAV Services' daily functions

350.   Richard Zeitlin own LAV Services and acts in the interests of the company.

47

351. Richard Zeitlin is individually liable for Maglione's claims against TPFE.

352. As a proximate result of TPFE's unlawful intentional discrimination, Maglione has suffered loss of pay and benefits, financial loss, and economic loss and Richard Zeitlin is liable for said damages.

353. Maglione seeks declaratory relief, award of liquidated damages, back pay, front pay, costs, attorneys' fees, and any and all such further relief as the trier of fact may assess.

## MAGLIONE COUNT XV- FMLA RETALIATION

## (TPFE)

354. This is a claim against TPFE to redress the unlawful employment practice of retaliation protected by the Family and Medical Leave Act (FMLA), 29 U.S.C. § 2601 *et. seq.*

355. At all times relevant to this action, Maglione was employed by TPFE.

356. As of April 2020, Maglione had worked for TFPE an excess of twelve (12) months.

357. As of March 2020, Maglione had worked for TFPE an excess of 1,250 hours in the preceding twelve (12) months for TPFE.

358. As of March 2020, Maglione was eligible for FMLA leave.

359.  TPFE employed fifty (50) or more employees at the location in which Maglione worked.

360.  TPFE was an employer for the purposes of FMLA.

361.  In March 2020, Maglione requested six (6) weeks of FMLA leave related to her serious medical conditions.

362.  TPFE denied her request for six (6) weeks of FMLA leave and only allowed her one (1) week of leave, although she was eligible for twelve (12) weeks of FMLA leave.

363.  In April 2020 Maglione had surgery related to her serious medical conditions and returned to work the following week.

364.  Soon after Maglione returned from FMLA leave, TPFE began retaliating against her by increasing her workload.

365.  Telemarketing calls were assigned to Maglione, in addition to her duties and responsibilities of an Office Manager. Prior to requesting FMLA leave, Maglione was not required make telemarketing calls.

366.  In July 2020, TPFE terminated Maglione's employment.

367.  Maglione was told by the General Manager, Lee Norris, that her termination was due to "revenue." Mr. Norris admitted that he did not know why Maglione's employment was terminated, nor was he aware of a conflict with her position and/or TPFE's revenue.

368. Maglione was then provided an Employee Termination Notice that stated her position was no longer available. Again, Mr. Norris admitted that he was unaware of any change to Maglione's employment and/or her position prior to her termination.

369. Maglione's termination was unlawful retaliation in violation of the FMLA.

370. Maglione was the only employee subject to termination for purported changes in revenue and/or position availability.

371. As a proximate result of TPFE's unlawful intentional discrimination, Maglione has suffered loss of pay and benefits, financial loss, and economic loss.

372. Maglione seeks declaratory relief, award of liquidated damages, back pay, front pay, costs, attorneys' fees, and any and all such further relief as the trier of fact may assess.

## MAGLIONE COUNT XVI- FMLA RETALIATION

### (LAV Services)

373. This is a claim against LAV Services to redress the unlawful employment practice of retaliation protected by the Family and Medical Leave Act (FMLA), 29 U.S.C. § 2601 *et. seq.*

374. At all times relevant to this action, Maglione was employed by TPFE.

375.   As of April 2020, Maglione had worked for TFPE an excess of twelve (12) months.

376.   As of March 2020, Maglione had worked for TFPE an excess of 1,250 hours in the preceding twelve (12) months for TPFE.

377.   As of March 2020, Maglione was eligible for FMLA leave.

378.   TPFE employed fifty (50) or more employees at the location in which Maglione worked.

379.   TPFE was an employer for the purposes of FMLA.

380.   In March 2020, Maglione requested six (6) weeks of FMLA leave related to her serious medical conditions.

381.   TPFE denied her request for six (6) weeks of FMLA leave and only allowed her one (1) week of leave, although she was eligible for twelve (12) weeks of FMLA leave.

382.   In April 2020, Maglione had surgery related to her serious medical conditions and returned to work the following week.

383.   Soon after Maglione returned from FMLA leave, TPFE began retaliating against her by increasing her workload.

384.   Telemarketing calls were assigned to Maglione, in addition to her duties and responsibilities of an Office Manager. Prior to requesting FMLA leave, Maglione was not required make telemarketing calls.

385.   In July 2020, TPFE terminated Maglione's employment.

386.   Maglione was told by the General Manager, Lee Norris, that her termination was due to "revenue." Mr. Norris admitted that he did not know why Maglione's employment was terminated, nor was he aware of a conflict with her position and/or TPFE's revenue.

387.   Maglione was then provided an Employee Termination Notice that stated her position was no longer available. Again, Mr. Norris admitted that he was unaware of any change to Maglione's employment and/or her position prior to her termination.

388.   Maglione's termination was unlawful retaliation in violation of the FMLA.

389.   Upon information and belief, a few months after Maglione filed an EEOC Charge asserting violations of the ADA and FMLA, TPFE began operating business as LAV Services.

390.   Maglione was the only employee subject to termination for purported changes in revenue and/or position availability.

391.   Upon information and belief, LAV Services conducts the same business as TPFE, is operated by the same managers, employs former TPFE employees, and represents former TPFE clients.

392.   Upon information and belief, LAV Services had notice of Maglione's claims against TPFE prior to becoming TPFE's successor and is able to provide the relief requested herein.

393.   LAV Services is liable for Maglione's claims based upon successor liability and/or alter ego theory.

394.   As a proximate result of TPFE's unlawful intentional discrimination, Maglione has suffered loss of pay and benefits, financial loss, and economic loss and LAV Services is liable for said damages.

395.   Maglione seeks declaratory relief, award of liquidated damages, back pay, front pay, costs, attorneys' fees, and any and all such further relief as the trier of fact may assess.

## MAGLIONE COUNT XVII- FMLA RETALIATION

### (Richard Zeitlin)

396.   This is a claim against Richard Zeitlin to redress the unlawful employment practice of retaliation protected by the Family and Medical Leave Act (FMLA), 29 U.S.C. § 2601 *et. seq.*

397.   At all times relevant to this action, Maglione was employed by TPFE and Richard Zeitlin owned TPFE.

398.   As of April 2020, Maglione had worked for TFPE an excess of twelve (12) months.

399.   As of March 2020, Maglione had worked for TFPE an excess of 1,250 hours in the preceding twelve (12) months for TPFE.

400.   As of March 2020, Maglione was eligible for FMLA leave.

401.   TPFE employed fifty (50) or more employees at the location in which Maglione worked.

402.   TPFE was an employer for the purposes of FMLA.

403.   In March 2020, Maglione requested six (6) weeks of FMLA leave related to her serious medical conditions.

404.   TPFE denied her request for six (6) weeks of FMLA leave and only allowed her one (1) week of leave, although she was eligible for twelve (12) weeks of FMLA leave.

405.   In April 2020, Maglione had surgery related to her serious medical conditions and returned to work the following week.

406.   Soon after Maglione returned from FMLA leave, TPFE began retaliating against her by increasing her workload.

407.   Telemarketing calls were assigned to Maglione, in addition to her duties and responsibilities of an Office Manager. Prior to requesting FMLA leave, Maglione was not required make telemarketing calls.

408.   In July 2020, TPFE terminated Maglione's employment.

409.   Maglione was told by the General Manager, Lee Norris, that her termination was due to "revenue." Mr. Norris admitted that he did not know why Maglione's employment was terminated, nor was he aware of a conflict with her position and /or TPFE's revenue.

410.   Maglione was then provided an Employee Termination Notice that stated her position was no longer available. Again, Mr. Norris admitted that he was unaware of any change to Maglione's employment and/or her position prior to her termination.

411.   Maglione's termination was unlawful retaliation in violation of the FMLA.

412.   Maglione was the only employee subject to termination for purported changes in revenue and/or position availability.

413.   At all times relevant to Maglione's employment, Richard Zeitlin owned TPFE and acted in the interests of the company.

414.   Upon information and belief, Richard Zeitlin maintained control over significant aspects of TPFE's daily functions.

415.   Upon information and belief, Richard Zeitlin maintains control over significant aspects of LAV Services' daily functions

416.   Richard Zeitlin own LAV Services and acts in the interests of the company.

417.   Richard Zeitlin is individually liable for Maglione's claims against TPFE.

418.   As a proximate result of TPFE's unlawful intentional discrimination, Maglione has suffered loss of pay and benefits, financial loss, and economic loss and Richard Zeitlin is liable for said damages.

419.   Maglione seeks declaratory relief, award of liquidated damages, back pay, front pay, costs, attorneys' fees, and any and all such further relief as the trier of fact may assess.

## MAGLIONE COUNT XVIII-COBRA & ERISA VIOLATIONS
## (TPFE)

420.   This is a claim against TPFE to redress violations of the Consolidated Omnibus Budget Reconciliation Act of 1986 (COBRA), 29 U.S.C. § 1161 *et. seq.* and the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001, *et. seq.*

421.   This is a claim against TPFE for failing to provide Maglione proper notice of her COBRA rights.

422.   TPFE is liable to Maglione for an amount calculated pursuant to ERISA § 502(c)(1) on a daily basis from the date TPFE should have provided her a COBRA notice.

423.   TPFE was Maglione's employer, plan sponsor for a group insurance plan, and employed more than twenty (20) employees at all relevant times.

424.   Maglione participated in TPFE's group health insurance plan.

425.   Based upon TPFE's failure to provide Maglione proper COBRA notice, Maglione did not have health insurance for a period of time.

426.   Maglione seeks legal penalties, costs, and taxes up to the maximum allowed by law, including, but not limited to, prejudgment interest, attorney fees, costs and all such further relief as the trier of fact may assess.

## MAGLIONE COUNT XIX-COBRA & ERISA VIOLATIONS

## (LAV Services)

427.   This is a claim against LAV Services to redress violations of the Consolidated Omnibus Budget Reconciliation Act of 1986 (COBRA), 29 U.S.C. § 1161 *et. seq.* and the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001, *et. seq.*

428.   TPFE failed to provide Maglione proper notice of her COBRA rights.

429.   This is a claim against LAV Services asserting liability for TPFE's violation of COBRA and ERISA.

430.   Upon information and belief, TPFE began operating business as LAV Services less than a year after terminating Maglione's employment.

431.   Upon information and belief, LAV Services conducts the same business as TPFE, is operated by the same managers, employs former TPFE employees, and represents former TPFE clients.

432.   TPFE and LAV Services are owned by the same individual, Richard Zeitlin.

433.   Upon information and belief, LAV Services had notice of Maglione's claims against TPFE prior to becoming TPFE's successor and is able to provide the relief requested herein.

434.   LAV Services is liable to Maglione for an amount calculated pursuant to ERISA § 502(c)(1) on a daily basis from the date TPFE should have provided her a COBRA notice.

435.   TPFE was Maglione's employer, plan sponsor for a group insurance plan, and employed more than twenty (20) employees at all relevant times.

436.   Maglione participated in TPFE's group health insurance plan.

437.   Based upon TPFE's failure to provide Maglione proper COBRA notice, Maglione did not have health insurance for a period of time.

438.   LAV Services is liable for Maglione's claims based upon successor liability and/or alter ego theory.

439.   Maglione seeks legal penalties, costs, and taxes up to the maximum allowed by law, including, but not limited to, prejudgment interest, attorney fees,

costs and all such further relief as the trier of fact may assess and LAV Services is liable for said damages.

## PLAINTIFF TINA RIDLEY'S CLAIMS

## FACTUAL ALLEGATIONS

440.   Ridley is a disabled female diagnosed with cervical cancer.

441.   Ridley's medical condition substantially limits one (1) or more of her major life activities.

442.   In 2015, Ridley was hired by TPFE as a verifier for its office located in Sylacauga, Alabama. Over the course of my employment I held a few positions and was eventually promoted to an assistant manager.

443.   On or about November 7, 2019, Ridley had a hysterectomy. During surgery, the surgeon discovered a cancerous tumor on Ridley's cervix. Shortly thereafter Ridley was diagnosed with cervical cancer.

444.   Ridley notified TPFE about her cancer diagnosis and requested medical leave as a reasonable accommodation to undergo treatment.

445.   TPFE approved her reasonable accommodation request.

446.   Around December 2019, Ridley's condition worsened, requiring her to submit a second reasonable accommodation for medical leave. TPFE approved her request and told her to return to work when she was well.

447. While on medical leave Ridley remained in contact with TPFE concerning her medical condition.

448. On or about March 9, 2020, TPFE terminated Ridley's employment.

449. Prior to her termination, TPFE did not notify Ridley of any issues concerning her reasonable accommodation.

450. TPFE told Ridley that her employment was terminated due to a reduction in force. Ridley and one other employee (Plaintiff James Harbin), who also had a disability, were the only employees subject to TPFE's supposed reduction in force.

451. The other employee terminated as a result of TPFE's supposed reduction in force was Plaintiff James Harbin. The day of the supposed reduction in force was Harbin's first day to return to work after being out on medical leave related to his disability.

452. Prior to her termination, Ridley did not have any disciplinary write ups.

453. TPFE targeted Ridley for termination and discriminated against her due to her disability in violation of the ADA.

454. After terminating her employment, TPFE did not provide Ridley a COBRA notice.

455. Prior to her termination, Ridley participated in TPFE's group health insurance plan.

456.   TPFE retaliated against Ridley for requesting temporary medical leave to address treatment of her serious health condition that qualifies as a disability under the ADA.

457.   TPFE retaliated against Ridley for exercising her rights protected by the FMLA.

458.   TPFE violated COBRA by failing to provide Ridley proper notice of her COBRA rights.

459.   Upon information and belief, a few months after Ridley filed an EEOC Charge asserting violations of the ADA and FMLA, TPFE began operating business as LAV Services.

460.   Upon information and belief, LAV Services conducts the same business as TPFE, is operated by the same managers, employs former TPFE employees, and represents former TPFE clients.

461.   TPFE and LAV Services are owned by the same individual, Richard Zeitlin.

462.   Upon information and belief, LAV Services had notice of Ridley's claims against TPFE prior to becoming TPFE's successor and is able to provide the relief requested herein.

463.   LAV Services is liable for Ridley's claims asserted herein pursuant to successor liability and/or alter ego theory.

## RIDLEY COUNT XX-ADA DISABILITY DISCRIMINATION

## (TPFE)

464. This is a claim against TPFE to redress the unlawful employment practice of disability discrimination protected by the Americans with Disability Act of 1990 (ADA), 42 U.S.C. § 12101 *et seq.*

465. This is a claim against TPFE for discriminating against Ridley based upon her disability.

466. Ridley is a disabled female diagnosed with cervical cancer.

467. Ridley's medical condition substantially limits one (1) or more of her major life activities.

468. At all times relevant to this action, TPFE was aware that Ridley was a qualified individual with a disability.

469. Around November 2019, Ridley requested temporary medical leave as a reasonable accommodation allowing her to undergo cancer treatments. TPFE approved Ridley's reasonable accommodation request.

470. In December 2019, Ridley submitted a renewed reasonable accommodation request allowing her additional leave to undergo treatment for serious medical condition. TPFE approved her second reasonable accommodation request.

471.   Ridley was able to perform the essential duties and responsibilities of her assistant manager position with an accommodation of temporary medical leave.

472.   On March 9, 2020, TPFE terminated Ridley's employment.

473.   Ridley's requests for temporary medical leave were reasonable accommodation requests.

474.   Prior to her termination, TPFE did not notify Ridley of any issues concerning her reasonable accommodations.

475.   TPFE told Ridley that her employment was terminated due to a supposed reduction in force.

476.   Ridley and one other employee who also had a disability were the only employees subject to TPFE's supposed reduction in force.

477.   TPFE targeted and terminated Ridley's employment due to her disability.

478.   Ridley's similarly situated co-workers who were not disabled were not subject to termination or the purported "reduction in force."

479.   As a proximate result of TPFE's unlawful intentional discrimination, Ridley suffered loss of pay and benefits, financial loss, economic loss, shame, humiliation and emotional distress.

480.   Ridley seeks declaratory and injunctive relief, an award of compensatory and punitive damages for mental anguish, reinstatement, back pay,

front pay, costs, attorneys' fees, and any and all such further relief as the trier of fact may assess.

## RIDLEY COUNT XXI-ADA DISABILITY DISCRIMINATION
### (LAV Services)

481. This is a claim against LAV Services to redress the unlawful employment practice of disability discrimination protected by the Americans with Disability Act of 1990 (ADA), 42 U.S.C. § 12101 *et seq.*

482. This is a claim against LAV Services asserting liability for TPFE's discrimination against Ridley based upon her disability.

483. Ridley is a disabled female diagnosed with cervical cancer.

484. Ridley's medical condition substantially limits one (1) or more of her major life activities.

485. At all times relevant to this action, TPFE was aware that Ridley was a qualified individual with a disability.

486. Around November 2019, Ridley requested temporary medical leave as a reasonable accommodation allowing her to undergo cancer treatments. TPFE approved Ridley's reasonable accommodation request.

487. In December 2019, Ridley submitted a renewed reasonable accommodation request allowing her additional leave to undergo treatment for

serious medical condition. TPFE approved her second reasonable accommodation request.

488.   Ridley's requests for temporary medical leave were reasonable accommodation requests.

489.   Ridley was able to perform the essential duties and responsibilities of her assistant manager position with an accommodation of temporary medical leave.

490.   On March 9, 2020, TPFE terminated Ridley's employment.

491.   Prior to her termination, TPFE did not notify Ridley of any issues concerning her reasonable accommodations.

492.   TPFE told Ridley that her employment was terminated due to a supposed reduction in force.

493.   Ridley and one other employee who also had a disability were the only employees subject to TPFE's supposed reduction in force.

494.   TPFE targeted and terminated Ridley's employment due to her disability.

495.   Ridley's similarly situated co-workers who were not disabled were not subject to termination or the purported "reduction in force."

496.   Upon information and belief, a few months after Ridley filed an EEOC Charge asserting violations of the ADA, TPFE began operating business as LAV Services.

497. Upon information and belief, LAV Services conducts the same business as TPFE, is operated by the same managers, employs former TPFE employees, and represents former TPFE clients.

498. Upon information and belief, LAV Services had notice of Ridley's claims against TPFE prior to becoming TPFE's successor and is able to provide the relief requested herein.

499. LAV Services is liable for Ridley's claims based upon successor liability and/or alter ego theory.

500. As a proximate result of TPFE's unlawful intentional discrimination, Ridley suffered loss of pay and benefits, financial loss, economic loss, shame, humiliation and emotional distress and LAV Services is liable for said damages.

501. Ridley seeks declaratory and injunctive relief, an award of compensatory and punitive damages for mental anguish, reinstatement, back pay, front pay, costs, attorneys' fees, and any and all such further relief as the trier of fact may assess.

## **RIDLEY COUNT XXII- ADA RETALIATION**

## **(TPFE)**

502. This is a claim against TPFE to redress the unlawful employment practice of retaliation protected by the Americans with Disability Act of 1990 (ADA), 42 U.S.C. § 12101 *et seq.*

503. This is a claim against TPFE for retaliating against Ridley for requesting a reasonable accommodation related to her serious medical condition.

504. Ridley is a disabled female diagnosed with cervical cancer.

505. Ridley's serious medical condition substantially limits one (1) or more of her major life activities.

506. At all times relevant to this action, TPFE was aware that Ridley was a qualified individual with a disability.

507. Around November 2019, Ridley requested temporary medical leave as a reasonable accommodation allowing her to undergo cancer treatments. TPFE approved Ridley's reasonable accommodation request.

508. In December 2019, Ridley submitted a renewed reasonable accommodation request allowing her additional leave to undergo treatment for serious medical condition. TPFE approved her second reasonable accommodation request.

509. Ridley's requests for temporary medical leave were reasonable accommodation requests.

510. Ridley was able to perform the essential duties and responsibilities of her assistant manager position with an accommodation of temporary medical leave.

511. On March 9, 2020, TPFE terminated Ridley's employment.

512. Prior to her termination, TPFE did not notify Ridley of any issues concerning her reasonable accommodations.

513. TPFE told Ridley that her employment was terminated due to a supposed reduction in force.

514. Ridley and one other employee who also had a disability were the only employees subject to TPFE's supposed reduction in force.

515. TPFE retaliated against Ridley for requesting temporary medical leave as a reasonable accommodation by terminating her employment.

516. Ridley's similarly situated co-workers who were not disabled were not subject to termination or the purported "reduction in force."

517. Upon information and belief, a few months after Ridley filed an EEOC Charge asserting violations of the ADA and FMLA, TPFE began operating business as LAV Services.

518. Upon information and belief, LAV Services conducts the same business as TPFE, is operated by the same managers, employs former TPFE employees, and represents former TPFE clients.

519. Upon information and belief, LAV Services had notice of Ridley's claims against TPFE prior to becoming TPFE's successor and is able to provide the relief requested herein.

520. LAV Services is liable for Ridley's claims based upon successor liability and/or alter ego theory.

521. As a proximate result of TPFE's unlawful intentional discrimination, Ridley suffered loss of pay and benefits, financial loss, economic loss, shame, humiliation and emotional distress and LAV Services is liable for said damages.

522. Ridley seeks declaratory and injunctive relief, an award of compensatory and punitive damages for mental anguish, reinstatement, back pay, front pay, costs, attorneys' fees, and any and all such further relief as the trier of fact may assess.

## RIDLEY COUNT XXIII- ADA RETAILATION

### (LAV Services)

523. This is a claim against LAV Services to redress the unlawful employment practice of retaliation protected by the Americans with Disability Act of 1990 (ADA), 42 U.S.C. § 12101 *et seq.*

524. This is a claim against LAV Services asserting liability for TPFE's retaliation against Ridley for requesting a reasonable accommodation related to her serious medical condition in violation of the ADA.

525. Ridley is a disabled female diagnosed with cervical cancer.

526. Ridley's serious medical condition substantially limits one (1) or more of her major life activities.

527.   At all times relevant to this action, TPFE was aware that Ridley was a qualified individual with a disability.

528.   Around November 2019, Ridley requested temporary medical leave as a reasonable accommodation allowing her to undergo cancer treatments. TPFE approved Ridley's reasonable accommodation request.

529.   In December 2019, Ridley submitted a renewed reasonable accommodation request allowing her additional leave to undergo treatment for serious medical condition. TPFE approved her second reasonable accommodation request.

530.   Ridley's requests for temporary medical leave were reasonable accommodation requests.

531.   Ridley was able to perform the essential duties and responsibilities of her assistant manager position with an accommodation of temporary medical leave.

532.   On March 9, 2020, TPFE terminated Ridley's employment.

533.   Prior to her termination, TPFE did not notify Ridley of any issues concerning her reasonable accommodations.

534.   TPFE told Ridley that her employment was terminated due to a supposed reduction in force.

535.   Ridley and one other employee who also had a disability were the only employees subject to TPFE's supposed reduction in force.

536.   TPFE retaliated against Ridley for requesting temporary medical leave as a reasonable accommodation by terminating her employment.

537.   Ridley's similarly situated co-workers who were not disabled were not subject to termination or the purported "reduction in force."

538.   Upon information and belief, a few months after Ridley filed an EEOC Charge asserting violations of the ADA and FMLA, TPFE began operating business as LAV Services.

539.   Upon information and belief, LAV Services conducts the same business as TPFE, is operated by the same managers, employs former TPFE employees, and represents former TPFE clients.

540.   Upon information and belief, LAV Services had notice of Ridley's claims against TPFE prior to becoming TPFE's successor and is able to provide the relief requested herein.

541.   LAV Services is liable for Ridley's claims based upon successor liability and/or alter ego theory.

542.   As a proximate result of TPFE's unlawful intentional discrimination, Ridley suffered loss of pay and benefits, financial loss, economic loss, shame, humiliation and emotional distress and LAV Services is liable for said damages.

543.   Ridley seeks declaratory and injunctive relief, an award of compensatory and punitive damages for mental anguish, reinstatement, back pay,

front pay, costs, attorneys' fees, and any and all such further relief as the trier of fact may assess.

## RIDLEY COUNT XXIV-COBRA & ERISA VIOLATIONS
## (TPFE)

544.   This is a claim against TPFE to redress violations of the Consolidated Omnibus Budget Reconciliation Act of 1986 (COBRA), 29 U.S.C. § 1161 *et. seq.* and the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001, *et. seq.*

545.   This is a claim against TPFE for failing to provide Ridley proper notice of her COBRA rights.

546.   TPFE is liable to Ridley for an amount calculated pursuant to ERISA § 502(c)(1) on a daily basis from the date TPFE should have provided her a COBRA notice.

547.   TPFE was Ridley's employer, plan sponsor for a group insurance plan, and employed more than twenty (20) employees at all relevant times.

548.   Ridley participated in TPFE's group health insurance plan.

549.   Based upon TPFE's failure to provide Ridley proper COBRA notice, Ridley did not have health insurance for a period of time.

550.   Ridley seeks legal penalties, costs, and taxes up to the maximum allowed by law, including, but not limited to, prejudgment interest, attorney fees, costs and all such further relief as the trier of fact may assess.

## RIDLEY COUNT XXV-COBRA & ERISA VIOLATIONS

### (LAV Services)

551.   This is a claim against LAV Services to redress violations of the Consolidated Omnibus Budge Reconciliation Act of 1986 (COBRA), 29 U.S.C. § 1161 *et. seq.* and the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001, *et. seq.*

552.   TPFE failed to provide Ridley proper notice of her COBRA rights.

553.   This is a claim against LAV Services asserting liability for TPFE's violation of COBRA and ERISA.

554.   Upon information and belief, TPFE began operating business as LAV Services less than a year after terminating Ridley's employment.

555.   Upon information and belief, LAV Services conducts the same business as TPFE, is operated by the same managers, employs former TPFE employees, and represents former TPFE clients.

556.   TPFE and LAV Services are owned by the same individual, Richard Zeitlin.

557.   Upon information and belief, LAV Services had notice of Ridley's claims against TPFE prior to becoming TPFE's successor and is able to provide the relief requested herein.

558.   LAV Services is liable to Ridley for an amount calculated pursuant to ERISA § 502(c)(1) on a daily basis from the date TPFE should have provided her a COBRA notice.

559.   TPFE was Ridley's employer, plan sponsor for a group insurance plan, and employed more than twenty (20) employees at all relevant times.

560.   Ridley participated in TPFE's group health insurance plan.

561.   Based upon TPFE's failure to provide Ridley proper COBRA notice, Ridley did not have health insurance for a period of time.

562.   LAV Services is liable for Ridley's claims based upon successor liability and/or alter ego theory.

563.   Ridley seeks legal penalties, costs, and taxes up to the maximum allowed by law, including, but not limited to, prejudgment interest, attorney fees, costs and all such further relief as the trier of fact may assess and LAV Services is liable for said damages.

**PLAINTIFF DEMANDS A TRIAL BY JURY ON ALL CLAIMS.**

DONE this 3rd day of November, 2021.

74

Respectfully Submitted,

William B. Beckum (ASB-4222-I70B)

Brooke R. Davis (ASB-6984-L36N)
*Attorneys for Plaintiff*

**OF COUNSEL:**

**BECKUM LAW, LLC**
3184 Cahaba Heights Road
Birmingham, Alabama 35243
Tel: (205) 588-0699

**DEFENDANTS TO BE SERVED VIA CERTIFIED MAIL:**

**TPFE, Inc.**
By Serving Registered Agent:
Corporate Creations Network, Inc.
4000 Eagle Point Corporate Drive
Birmingham, Alabama 35242

**LAV Services, LLC**
4730 South Fort Apache Road, Suite 300
Las Vegas, Nevada 89147

**Richard Zeitlin**
4730 South Fort Apache Road, Suite 300
Las Vegas, Nevada 89147